UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-cv-00586-MOC-DSC

| | | |
|---|---|---|
| **DIANNE B. BOYTER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **BRIAN T. MOYNIHAN, et al.** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on the Bank of America defendants' (hereinafter "the bank defendants") Motion to Dismiss (#5) and defendants Hutchens, Senter, Kellam & Pettit, P.A.'s and Substitute Trustee Services, Inc.'s (hereinafter "the law firm defendants") Motion to Dismiss (#23). Also before the court is plaintiff's Motion to Strike Supplemental Memorandum (#30). For the reasons that follow, plaintiff's Motion to Strike Supplemental Memorandum will be denied, the motions to dismiss will be allowed, and this action dismissed.

## FINDINGS and CONCLUSIONS

**I.      Introduction**

In this action, plaintiff attempts to sue the bank, bank officials, the law firm assisting the bank, and the substitute trustee service that were involved in the foreclosure of plaintiff's home in Union County, North Carolina. This is not plaintiff's first attempt to do so, as she has filed two other actions in this court against these same defendants as well as attempted to remove the state foreclosure proceeding to this court. See Boyter v. Bank of America, N.A., 3:11-CV-412 (voluntarily dismissed by the plaintiffs on December 27, 2011); Boyter v. Bank of America

1

Corporation, 3:12-CV-189 (dismissed for failure to state a claim); Boyter v. Hutchens, Senter, Kellam & Pettit, P.A., 3:13cv201 (remanded as improperly removed).

As to the dispositive motions, plaintiff, who is proceeding pro se, was advised in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) of the necessity of responding, advised of the consequences of not responding, and allowed additional time to file a response to each dispositive motion. See Orders (#7 & #25). Plaintiff has filed responses within the time allowed.

## II. Factual Background

In considering the motions to dismiss, the court has drawn all facts and inferences from the Complaint in a manner most favorable to plaintiff. All of the claims asserted in this matter arise out of the origination, servicing, and foreclosure of a mortgage loan secured by real property located in Matthews, North Carolina, which is in Union County. Compl. ¶ 2.

On or about August 17, 2006, plaintiff executed a promissory note (the "Note") payable to Amerisouth Mortgage ("Amerisouth") in the amount of $303,200. Id. The Note was secured by a deed of trust against the Union County property. Id. Plaintiff contends that, after the Loan was originated, a series of transactions occurred by which the Loan was securitized into a trust. Compl. ¶ 2. According to plaintiff, neither the Note nor the Deed of Trust was properly assigned during these transactions such that the bank lacks standing to enforce the Loan. Id. Specifically, plaintiff contends that the securitization transactions were governed by a pooling and servicing agreement ("PSA") which the bank violated. Compl. ¶¶ 20, 22. Plaintiff alleges that the bank then recorded and filed fabricated and false documents in the Union County, North Carolina Register of Deeds and before the Clerk of Court. Compl. ¶ 3.

In sum, plaintiff claims that in the Union County action the bank is attempting to enforce the Note and to exercise the power of sale in the Deed of Trust by foreclosing on the Property when it lacks standing to do so. Compl. ¶¶ 22, 23, 47.

Plaintiff also asserts that she sent several pieces of correspondence to the bank and the firm handling the foreclosure, defendant Hutchens Senter, Kellam & Pettit, concerning the loan. Specifically, plaintiff alleges that, on February 25, 2011, she disputed the debt. Compl. ¶ 35. Then, on March 28, 2011, plaintiff sent a Qualified Written Request ("QWR") to the bank, with a copy to Defendant Moynihan. Compl. ¶ 36. Plaintiff acknowledges that she received responses to the QWR on May 12, 2011, and on June 30, 2011. Compl. ¶¶ 37-38. However, plaintiff "does not dispute that she owes money on her mortgage obligation." Compl. ¶ 50. Instead, plaintiff "disputes the amount owed and seeks the Court's assistance in determining who the true creditor is of her Note and Deed of Trust." Id.

In addition to seeking assistance in determining the amount owed and whom it is owed to, plaintiff has asserted four claims: (I) Civil Conspiracy; (II) Violations of 18 U.S.C. §§ 1961, 1962(b), and 1964; (III) Violation of 15 U.S.C. § 1692(e)5; and (IV) Abuse of Legal Process. The court will address each contention.

## III.    Applicable Standard: Rule 12(b)(6)

Until recently, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989); Conley v. Gibson, 355 U.S. 41 (1957). This "no set of facts" standard has been specifically abrogated by the Supreme Court in recent decisions. First, in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in Conley,

supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original). Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in his complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.

## IV.     Discussion

### A.     Collateral Estoppel

The identity of the note holder, the validity of the debt, and the fact of plaintiff's default were conclusively determined by the Union County, North Carolina Superior Court, as has been shown by the defendants b y and through their exhibits. This court has taken judicial notice of those proceedings and the findings of the North Carolina Superior court in that matter. Thus, the doctrine of collateral estoppel prevents plaintiff from seeking to relitigate those issues in this court.

For an action to be barred by the doctrine of collateral estoppel, five elements must be satisfied: (1)  that "the issue sought to be precluded is identical to one previously litigated;" (2) that the issue was actually determined in the prior proceeding; (3)  that the issue's determination was "a critical and necessary part of the decision in the prior proceeding;" (4)   that the prior judgment is final and valid; and (5)  that the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum." Mixon v. Wells Fargo Home Mortg., 2012 U.S. Dist. LEXIS 52141, *4 (W.D.N.C. Apr. 13, 2012)(citation omitted).

As shown by the bank defendants, a "Foreclosure Order" was  issued by the North Carolina Superior Court of Union County on September 13, 2012 which confirmed BANA's standing to foreclose on the Property. Pursuant to the Full Faith and Credit Statute, 28 U.S.C. § 1738, this Court is obligated to "apply state preclusion rules to determine whether a prior state court judgment has either issue or claim preclusive effect." Mixon, 2012 U.S. Dist. LEXIS at *4 (citation omitted).  The Foreclosure Order  operates as a "final judgment of the superior court." In re Foreclosure by David A. Simpson, P.C., 711 S.E.2d 165, 169 (N.C. Ct. App. 2011).  As

plaintiff did not appeal the Foreclosure Order within 10 days, this court may take judicial notice of the Foreclosure Proceeding and the Foreclosure Order on this Motion. Charlotte-Mecklenburg Board of Educ. v. Schenkel & Shultze, Inc., 2006 U.S. Dist. LEXIS 38862 *6-7 (W.D.N.C. June 12, 2006).

After this action was commenced, the bank defendants apparently took a voluntary dismissal in January 2013 of the foreclosure proceeding, which was well after the Foreclosure Order had been entered. As shown in supplemental briefing, Memorandum (#26), the bank defendants have moved to reopen such proceeding contending such voluntary dismissal was inadvertent. While such motion has not yet been reached, it appears that plaintiff would still be collaterally estopped from re-litigating issues resolved in the Final Order of Forfeiture in this court as the voluntary dismissal was not with prejudice or on the merits. In Gilken v. Mason, 256 N.C. 533 (1962), the North Carolina Supreme Court held:

> Although the court, with reference to plaintiff's alleged cause of action, ordered the mistrial and continuance, the court's prior ruling, allowing plaintiff's motion for dismissal of defendant's cross action, was not disturbed. . . . No judgment implementing the court's said ruling was entered. Even so, upon this record, the court's said ruling must be considered as a judgment of nonsuit as to defendant's alleged cross action.

Id. at 534-35 (citation omitted). Thus, the court finds that the prior action resulted in a valid, final determination by the state court.[1] The remaining four elements of the collateral estoppel analysis ask: whether the issues in the previous litigation are identical to the issues sought to be

---

[1] The bank defendants suggest in their Supplemental Memorandum that this court could withhold decision pending resolution of its motion to reopen before the state court. This court finds, however, that the bank's voluntary dismissal of the *action* had no impact on the validity or finality of the underlying *Foreclosure Order* under a fair reading of prevailing North Carolina law. See Gilken, supra. Indeed, in Brockway v. Evergreen Intern. Trust, 2012 WL 5458464 (4th Cir. Nov. 9, 2012), the Court of Appeals for the Fourth Circuit held in an unpublished decision that a dismissed action remains operable where the state court still had the authority to modify, amend, or vacate the dismissal order.

7

precluded; whether the issues were actually determined in the prior proceedings; whether the issues were a critical and necessary part of the determination in the prior proceedings; and whether plaintiff had a full and fair opportunity to litigate the issues in the prior forum. See Mixon, supra.

Review of the Foreclosure Order reveals that it was issued after a foreclosure hearing conducted in accordance with North Carolina law. In its Forfeiture Order, the state court determined, in relevant part, as follows: (1) BANA ["the bank," herein], as successor by merger to BAC Home Loans Servicing, LP, is the holder of the Note, and the Note evidences a valid debt owed by Plaintiff; (2) that Plaintiff defaulted under the terms of the Note and that the Deed of Trust gives the holder of the note the right to foreclose under a power of sale; (3) that notice of the hearing was served on the record owners of the Property and all other persons against whom BANA intended to assert liability for the debt; and (4) Plaintiff showed no valid legal reason why foreclosure should not commence. Based on these and other findings, the court ordered that "the Substitute Trustee can proceed to foreclose under the terms of the above described Deed of Trust and give notice of and conduct a foreclosure sale as by statute provided." See Bank Defendant's Memorandum in Support (#5), at Ex. A.

Turning to the claims asserted in the Complaint, it is apparent that each claim against each defendant is barred by the doctrine of collateral estoppel. As to Count I, plaintiff alleges that a conspiracy existed between the various defendants to provide "false testimony regarding Plaintiff's alleged default on the [Note and Deed of Trust] and fake documentary evidence to the Court to support their plan to obtain Plaintiff's home." See Compl. ¶ 58. Plaintiff alleges a conspiracy between defendants to effect "foreclosure upon Plaintiff's home without, *inter alia*, standing to do so." Compl. ¶ 62. As to Count II, plaintiff alleges that defendants committed

RICO violations by using "sham pleadings, manufactured 'evidence' such as fraudulent affidavits in a civil court action in order to fraudulently obtain a judgment of foreclosure." Compl. ¶ 68. As to Count III, plaintiff alleges that defendants attempted to collect on the Note "under false pretenses" by misrepresenting that the bank, as successor by merger to BAC Home Loans Servicing, LP was the "creditor, lender, note holder of Plaintiff's purported mortgage possessing the legal standing to foreclose on Plaintiff's home." Compl. ¶¶ 74, 79. As to Count IV, plaintiff asserts abuse of legal process because defendants did not have "sufficient documentation to establish" that they were the proper parties to bring the foreclosure action and further that the documentation upon which defendants relied was "manufactured." Compl. ¶ 92. The common thread running through each contention is a claim that the bank defendants did not have a valid secured interest in the property and, therefore, the bank lacked standing to foreclose on the her property. The state court, however, specifically addressed his issue: "Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP is the holder of the note sought to be foreclosed and it evidences that this is a valid debt owed by" plaintiff. See Memorandum in Support (#5), at Ex. A.

Under North Carolina law, plaintiff had an opportunity to present evidence as to the identity of the Note holder. See N.C. Gen. Stat. § 45-21.16. Once the Order issued, "[a]ny deficiency in the foreclosure hearing should have been raised . . . by . . . an appeal of the resulting order." Vogler v. Countrywide Home Loans, Inc., 2010 U.S. Dist. LEXIS 88485, at *16 (M.D.N.C. Aug. 26, 2010) (citation omitted). Thus, plaintiff is collaterally estopped from asserting herein that the bank is not the holder of the debt, that the bank lacks standing to foreclose, that the debt is invalid, or from asserting any of the claims she has attempted to assert

9

against these defendants. Put another way, plaintiff cannot re-litigate issues finally resolved in the state foreclosure proceeding by challenging that underlying decision in this court.[2]

B. **Civil Conspiracy**

Plaintiff fails to assert a cognizable claim for "civil conspiracy" as such an independent claim does not exist as a matter of state law. While there is no freestanding cause of action for "civil conspiracy," the elements of a claim seeking damages for the wrongful acts committed in the course of a civil conspiracy in North Carolina would appear to be:

(1) an agreement between two or more persons to commit a wrongful act;

(2) an act in furtherance of the agreement; and

(3) damage to the plaintiff as a result of the wrongful act.

See Henderson v. LeBauer, 101 N.C. App. 255, 260 (1991). As this court has recognized, this claim cannot be brought independent of a properly-alleged claim for underlying wrongdoing, making such claim subject to dismissal if the underlying claims for wrongful conduct are dismissed. Precision Components, Inc. v. C.W. Bearing USA, Inc., 3:06-CV-259 (W.D.N.C. Dec. 16, 2008) (Reidinger, J.). Inasmuch as plaintiff cannot state a freestanding claim for civil conspiracy as a matter of law and, as shown below, has not brought another valid claim to which such a claim could attach, such claim will be dismissed under Rule 12(b)(6).

---

[2] Foreclosure actions brought under state law do not give rise to federal question subject matter jurisdiction. Simpson v. Wilson, 3:11–CV–576, 2012 U.S. Dist. LEXIS 40489 *4–5 (W.D.N.C. Feb. 7, 2012) (recommending remanding foreclosure proceeding); City of Durham v. Wadsworth, 2009 WL 186174 (M.D.N.C 2009) (remanding tax foreclosure action); McNeely v. Moab Tiara Cherokee Kituwah Nation Chief, 2008 WL 4166328 (W.D.N.C 2008) (nothing in "simple foreclosure action of real property ... suggests the presence of a federal question").

### C. RICO Claim

Next, plaintiff contends that defendants have violated 18 U.S.C. §§ 1961, 1962(b), and 1964 (hereinafter "Civil RICO"). Plaintiff bases such claim on allegations that the defendants conspired to "steal the equity in Plaintiff's home through the use of sham pleadings, manufactured 'evidence' such as fraudulent affidavits in a civil court action in order to fraudulently obtain a judgment of foreclosure." Compl. ¶ 68.

To plead a civil RICO violation, plaintiff must establish "(1) a person; (2) an enterprise; and (3) a pattern of (4) racketeering activity (5) which causes injury to the plaintiff." Williams v. Equity Holding Corp., 245 F.R.D. 240, 243 (E.D. Va. 2007). Further, plaintiff must articulate at least two predicate acts of racketeering that form a "pattern of racketeering." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004); see 18 U.S.C. § 1961(5). Plaintiff fails from the outset to make sufficient plausible factual allegations that would support maintenance of a civil RICO action in this case, as thoroughly outlined in the bank defendants' brief.

Further, plaintiff's civil RICO claim is based almost entirely on a contention that the documents on which the Foreclosure Order issued were "shams." Collateral estoppel precludes this court from reaching such issue as the state court has already accepted such documents in issuing its final Order. Had plaintiff wished to challenge the authenticity of the documents submitted by defendants in support of the foreclosure, she had an opportunity as a matter of law to do so in state trial court, see N.C. Gen. Stat. § 45-21.16, and if dissatisfied with that determination, by lodging an appeal with the North Carolina Court of Appeals. Vogler, supra. Plaintiff's RICO claim will, therefore, be dismissed.

### D. Fair Debt Collection Procedures Act

11

Plaintiff's third cause of action is brought under the Fair Debt Collection Procedures Act (the "FDCPA"). This claim is barred by collateral estoppel because it too is predicated on plaintiff's assertion that "Defendants attempted to collect on the Note under false pretenses, namely that [the bank] are [*sic*] creditor, lender, note holder of Plaintiff's purported mortgage possessing the legal standing to foreclose upon Plaintiff's home." Compl. ¶ 74. These issues were conclusively determined by the state court in the Foreclosure Order.

Further, plaintiff has improperly brought a claim under FDCPA against parties who are not under the circumstances presented in this case subject to such provision. To be liable, defendants must be "debt collectors" as to the loan in question, and neither the bank that held the note, its employees, or its agents (such as a law firm or trustee service employed to foreclose the Note and Deed of Trust) are considered debt collectors. "Debt Collector" does not include persons who collect debt "to the extent such activity ... (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person ...." Id. The FDCPA's definition of debt collector "does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt, so long as the debt was not in default at the time it was assigned." Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985). See also Scott v. Wells Fargo Home Mortg. Inc., 326 F. Supp. 2d 709, 717 (E.D.Va. 2003) ("[C]reditors are not liable under the FDCPA. There is no allegation that the bank defendant acquired the debt only after it was in default.

The court will, therefore, dismiss the FDCPA claim.

### E. Abuse of Legal Process

Plaintiff next claims that the defendants abused legal process in bringing the foreclosure action. From the outset, the court notes that all of the complained-of-acts are well within the normal and customary boundaries of a foreclosure proceeding.

In North Carolina, the essential elements of a claim for abuse of process are, as follows:

> (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceeding. *Barnette v. Woody*, 242 N.C. 424, 431, 88 S.E.2d 223, 227-28 (1955). " '[A]buse of process is the misuse of legal process for an ulterior purpose. It consists in the malicious misuse or misapplication of that process after issuance to accomplish some purpose not warranted or commanded by the writ.'" Stanback v. Stanback, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979) (quoting Fowle v. Fowle, 263 N.C. 724, 728, 140 S.E.2d 398, 401 (1965)).

Beroth Oil Co. v. Whiteheart, 173 N.C.App. 89, 99-100 (2005). Plaintiff alleges that the defendants initiated the foreclosure action without "sufficient documentation to establish that it is the proper party to bring this action and the documentation upon which it relied on for standing was improperly manufactured by Defendants, individually or jointly." Compl. ¶ 92.

Plaintiff has not alleged plausible facts that could show that any defendant acted in pursuit of an ulterior purpose. Indeed, no such purpose can even be inferred from the pleadings as the purpose of a foreclosure proceeding is to foreclose on the collateral securing a note and deed of trust, which is precisely what defendants did in this case. Plaintiff has failed to allege what advantage defendants sought to gain over her in respect to some matter extrinsic to her mortgage. Plaintiff has failed to allege plausible facts that

defendants' action in pursuing foreclosure was a "malicious misuse or perversion of a civil or criminal writ to accomplish some purpose not warranted or commanded by the writ." Rockingham Square Shopping Center, Inc. v. Integon Life Ins. Corp., 52 N.C. App. 633, 646 (1981).  Plaintiff's abuse of process claim will, therefore, be dismissed.

    **F.**    **Motion to Strike the Bank Defendants' Supplemental Memorandum**

Finally, the court has considered plaintiff's Motion to Strike the Bank Defendants' Supplemental Memorandum under Rule 12(f).  As discussed above, the supplemental memorandum explains why the foreclosure action was voluntarily dismissed in January, what action has been taken to remedy such situation, and the legal impact such has on issues raised in this case. Plaintiff has not shown that the Supplemental Brief is redundant, immaterial, impertinent, or scandalous.  Such supplemental memorandum is precisely what a supplemental memorandum is for, which is to apprise the court of matters that have occurred which may impact decision and which have not been covered in other briefs.  The Motion to Strike will, therefore, be denied.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1)    bank defendants' Motion to Dismiss (#5) is **GRANTED**;

(2)    defendants Hutchens, Senter, Kellam & Pettit, P.A.'s  and Substitute Trustee Services, Inc.'s Motion to Dismiss (#23) is **GRANTED;**

(3)    plaintiff's Motion to Strike Supplemental Memorandum (#30) is **DENIED;**  and

(4)    this action is **DISMISSED** with prejudice.

Signed: April 3, 2013

Max O. Cogburn Jr.
United States District Judge